387 So.2d 8 (1980)
James Henry WILLIAMS, Plaintiff,
v.
LOUISIANA MACHINERY COMPANY, INC., et al., Defendants.
No. 7602.
Court of Appeal of Louisiana, Third Circuit.
May 21, 1980.
*10 John G. Williams, Natchitoches, for plaintiff.
Watson, Murchison, Crews, Arthur & Corkern, William P. Crews, Jr., Natchitoches, for defendants.
Before FORET, SWIFT and STOKER, JJ.
FORET, Judge.
This is a suit by James Henry Williams against Louisiana Machinery Company, Inc., and its insurer, Commercial Union Assurance Company, to recover damages to a Caterpillar 397 diesel engine allegedly sustained as a result of repair work performed on the engine's governor.[1]
The trial court, finding the defendant negligent and the plaintiff free of contributory negligence, awarded $4,000.00 to plaintiff for the loss of the engine, $1,043.93 for the purchase price of the replacement parts and repair services, and $1,800.00 for the cost of installation of a new engine.
Both parties have appealed. The defendants seek the reversal of the trial court's judgment, or, in the alternative, that it be affirmed as to quantum. Plaintiff urges that the judgment should be reversed insofar as it fails to recognize this claim as one in redhibition and that he is therefore entitled to attorney's fees. Additionally, plaintiff seeks an increase in damages.
The plaintiff is the owner and operator of a cotton gin in Natchitoches Parish, Louisiana. This gin was powered by a 397 Caterpillar diesel engine from 1951 through part of 1977. Plaintiff had several employees, some of whom were mechanics, who did some service and maintenance on this engine from time to time. Defendant, Louisiana Machinery Company, was called upon to repair any condition which required involved or expert mechanical skills.
In July of 1977, plaintiff took the governor to the shop of Louisiana Machinery in Alexandria, Louisiana. It was discovered during the course of repairs being made to the governor that the spindle shaft needed replacement. A new spindle shaft along with a new pinion assembly was installed in the governor by Bradford Beebe, a mechanic employed by Louisiana Machinery. The new pinion assembly was approximately 5/8 *11 inches to ¾ inches shorter than the old assembly which was removed from the governor, a characteristic which prevented the governor from functioning properly. On or about September 8, 1977, the repaired governor was replaced on the Caterpillar diesel engine. The engine was then started to determine whether or not it was functioning properly. As a result of the malfunction of the governor, the engine ran at an excessively high rate of speed and was virtually destroyed before it stopped.

REDHIBITION
Counsel for plaintiff labors at length in an attempt to show that this suit is one in redhibition, thereby entitling plaintiff to an award for attorney's fees. This contention is without merit.
Redhibition is dealt with in our Civil Code by Articles 2520, et seq. Article 2520 provides:

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
Plaintiff is correct in his assertion that the spindle and pinion assembly sold to him were useless for the purpose for which they were purchased. This uselessness, however, was not due to any vice or defect in the thing. "Vice or defect" as used in Article 2520 contemplated a physical imperfection or deformity; a lacking of a necessary component or level of quality. The thing plaintiff purchased was not defective within the contemplation of Article 2520. It was merely the wrong part. It was not capable of performing the function for which it was purchased, not because it was defective, but because it was the wrong part. As the trial court very astutely observed: "Redhibition addresses itself to the quality of the merchandise or thing, and not to a situation where a buyer is furnished with a part, or component, that does not fit". Therefore, the basis of plaintiff's remedy lies not in an action in redhibition, but in negligence.[2]

FAULT
LSA-C.C. Article 2315 states, in pertinent part:
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.". . .
This article is the basis for tort liability in Louisiana. For a plaintiff to recover in Louisiana for damages, the damages must have been caused by the "fault" of another. There must be a duty owed by the defendant, or by someone for whom the defendant is answerable, to the plaintiff; a breach of this duty; and this duty must be the cause-in-fact of the damages suffered by the plaintiff. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Ferdinand F. Stone, Tort Doctrine, 12 Louisiana Civil Law Treatise § 270 (1977).
"Fault" as used in Article 2315 encompasses more than negligence. It is the breach of a duty owed by one party to another under particular facts and circumstances of a given case. United States Fidelity & Guaranty Co. v. State, Through Department of Highways, 339 So.2d 780 (La.1976). "Fault" is a broad concept embracing all conduct falling below a proper standard. Kahoe v. State Farm Mutual Automobile Insurance Co., 349 So.2d 1345 (La.App. 1 Cir. 1977), writ denied, 350 So.2d 1212 (1977).
The standard of care to be applied to the case sub judice is found in LSA-C.C. Article 2316 which states:
"Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."
*12 All persons or entities holding themselves out as possessing certain skills or capabilities owe a duty to whomever procures their services to perform the task in a non-negligent, prudent and skillful manner.
A repairer has a duty, arising in tort, to exercise reasonable care and skill in the design and repair of the object to be repaired commensurate with the risk of harm flowing from the normal use of that product. Todd Ship Yards Corp. v. Turbine Service, Inc., 467 F.Supp. 1257 (5 Cir. 1978), Restatement (Second) of Torts, § 404 (1965).
The record shows that Bradford Beebe, a Louisiana Machinery mechanic, was never given instructions as to the size of spindle required in the type of governor presented for repair. More importantly, Beebe testified that he did not use the serial numbers from the engine when ordering the new spindle and in fact admitted that the wrong part was used. (Tr., pgs. 176-187) Furthermore, plaintiff was told by an employee of defendant, Louisiana Machinery, that no special skill or expertise was required to re-attach the governor to the engine. It is disputed whether or not plaintiff was instructed as to the procedure to be followed in performing a "backlash" test. The trial court was in a much better position to evaluate the credibility of the witnesses on this issue than is this Court. We can find nothing which would indicate that his determination as to this issue is manifestly erroneous. We are therefore of the opinion that Louisiana Machinery's negligence was a cause-in-fact of the plaintiff's harm; that Louisiana Machinery owed a duty of workmanlike performance to plaintiff; that this duty was breached, and plaintiff's damage was a direct and consequential result thereof.
Defendants could exculpate themselves from liability by showing that an intervening act of plaintiff rose to the status of a superseding cause. Defendants argue that plaintiff was negligent in not performing a "backlash" test before attaching the governor to the engine and in not connecting the throttle linkage which would have allowed him to shut the engine off before it was damaged. Defendants further assert that this alleged negligence of plaintiff was a superseding cause. We disagree. We do not think plaintiff was negligent in acting as he did. Even if he were negligent, a repairer or manufacturer is subject to liability even though a dangerous condition is discoverable by an inspection which a person in William's position should be under a duty to make. Todd Ship Yards Corporation v. Turbine Service, Inc., supra, Restatement (Second) of Torts, § 396 (1965). Intervening negligence or an intervening cause does not necessarily relieve the tortfeasor of liability. Dixie Drive It Yourself System v. American Beverage Co., supra; Hernandez v. Toney, 289 So.2d 318 (La.App. 1 Cir. 1973).

DAMAGES
The primary objective of a plaintiff seeking redress for property damage through the courts is to be returned as nearly as possible to the status or position he was in immediately preceding the damage caused by the defendant. Our Supreme Court, in Lambert v. American Box Co., 144 La. 604, 81 So. 95 (1919), stated:
". . . The obligation of defendant, however, is to indemnify plaintiffto put him in the position that he would have occupied if the injury complained of had not been inflicted on him. . . ."
In Coleman v. Victor, 326 So.2d 344 (La. 1976), at page 347, the Supreme Court noted:
"Three tests have been utilized in determining property damage: (1) cost of restoration, if the damage [sic] item can be adequately repaired; (2) value differential, difference in value prior to and subsequent to the damage; (3) cost of replacement, less depreciation, if the value before and after the damage cannot be reasonably determined or if the cost of repair is more than the value. Peak v. Cantey, 302 So.2d 335 (La.App.1st Cir. 1974); Roshong v. Travelers Insurance Company, 281 So.2d 785 (La.App.3rd Cir. 1973); Aetna Insurance Company v. Palao, *13 263 So.2d 394 (La.App.4th Cir. 1972); Granger v. Bouillion, 220 So.2d 764 (La. App.1st Cir. 1969); Taylor v. Allstate Insurance Company, 205 So.2d 807 (La. App.1st Cir. 1967); Keating v. Boyce Machinery Corp., 196 So.2d 623 (La.App.1st Cir. 1967)."
The Court continued stating that no mechanical rule can be applied with exactitude in assessment of property damage under LSA-C.C. Article 2315. Each case must rest on its own facts and circumstances as supported by the proof in the record.
In applying the tests mentioned above to the facts and circumstances of this case, we conclude that the value differential, the difference in value prior to and subsequent to the damage, would be a proper award. The record shows that the cost of restoration is far in excess of the value of the engine at the time that it was destroyed. Likewise, the third test mentioned above cannot be used since this engine was no longer manufactured at the time it was destroyed and therefore could not be replaced by one like the original. Also, the record is devoid of any evidence relating to depreciation.
Both Bobby Wilson and George Rolph, defendants' experts, testified that the value of the engine at the time of its destruction was between $2,000.00 and $4,000.00. The trial court accepted the amount of $4,000.00 as appropriate. We agree. The record also reveals that the cost of repair of the governor was $1,043.93, and that the cost of installation of a new engine would be approximately $1,800.00. We think the trial court's award of $6,843.93 is proper.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be borne equally by the parties, one-half by plaintiff, James Henry Williams, and one-half by the defendants, Louisiana Machinery Company, Inc. and Commercial Union Assurance Company.
AFFIRMED.
NOTES
[1] "Governor", as used herein, is an apparatus attached to an engine which is designed to regulate its speed or revolutions per minute.
[2] Having concluded that plaintiff's action is not one of redhibition, plaintiff's demands for attorney's fees is without merit.